# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
### SPRINGFIELD DIVISION

| | | |
|---|---|---|
| LINDA FOLLIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  08-3056 |
| | ) | |
| MEMORIAL MEDICAL CENTER, | ) | |
| a corporation, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION

JEANNE E. SCOTT, U.S. District Judge:

This cause is before the Court on Defendant Memorial Medical Center's Motion for Summary Judgment (d/e 16).  For the reasons stated below, the Motion is allowed in part and denied in part.

## APPLICABLE LAW

A motion for summary judgment must be granted "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ.

P. 56(c)). Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Herman v. Nat'l Broad. Co., 744 F.2d 604, 607 (7th Cir. 1984). Once the moving party has produced evidence showing that it is entitled to summary judgment, the non-moving party must present evidence to show that issues of fact remain. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). "Summary judgment is appropriately entered 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" McKenzie v. Ill. Dept. of Transp., 92 F.3d 473, 479 (7th Cir. 1996) (quoting Celotex, 477 U.S. at 322).

To successfully oppose a motion for summary judgment, the nonmoving party must do more than raise a "metaphysical doubt" as to the material facts. See Matsushita Elec. Indus. Co., 475 U.S. at 586. Instead, she must "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" Id. at 587 (emphasis in original) (quoting Fed. R. Civ. P. 56(e)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"

Id. Finally, "[a]lthough [the court] must, for purposes of summary judgment review, draw any inferences from the record in favor of the plaintiff, [it is] not required to draw every conceivable inference from the record. [It] need draw only reasonable ones." See Tyler v. Runyon, 70 F.3d 458, 467 (7th Cir. 1995) (internal quotation marks omitted).

FACTS

Plaintiff Linda Follis is a 55-year-old woman who worked for Defendant Memorial Medical Center (MMC) as the Mammography Department's manager from August 1, 2005, through January 12, 2007. In January of 2007, MMC terminated Follis, and she claims that MMC failed to accommodate a disability she suffered and discriminated against her based on her age and a request she made for leave.

When Follis first started working as the Mammography Department manager, a woman named Kathy Ambs supervised her. Kevin England, the Vice President of Clinical Support Services, supervised Ambs. Ambs left MMC in the fall of 2006, and England asked Follis and others to help him interview candidates to fill her position as Director of Radiology. During this process, Follis participated in an interview of Marjorie Calvetti, who at that time worked in MMC's radiology department as an education

coordinator. Before Calvetti interviewed for Ambs' position, Follis and Calvetti had interacted on several occasions. Follis believed that they had different leadership styles, and she worried that she and Calvetti would not work well together.

After interviewing Calvetti, Follis prepared a written evaluation of her for England. She wrote that Calvetti was rigid and controlling, unresponsive to customer needs, arrogant, sometimes clueless, and overly self-focused. She also suggested that Calvetti lacked deep and broad leadership experience.

Despite Follis' evaluation, Calvetti became the new Director of Radiology on October 10, 2006. Ten days later, Calvetti told Follis that "[a]nybody who thinks I'm too young . . . or can't do this job doesn't know what I'm made of." <u>Motion for Summary Judgment</u>, Exhibit A, <u>Follis Deposition</u>, at 12. At the time, Calvetti was 32, and Follis was 52.

After Calvetti started as Director of Radiology, Follis attended a meeting at which she and another MMC employee who reported to Calvetti, Kelly Herter, were present. During the meeting, Herter asked Calvetti if she could leave work early, assuming that her work was done and the unit appropriately staffed. Calvetti told Herter, "Yes, if you're staffed; but if you

go shopping and buy shoes and don't bring me any, then you'll be in trouble." <u>Motion for Summary Judgment</u>, Exhibit A, <u>Follis Deposition</u>, at 12-13.  Follis believes Herter is younger than she is.

Follis never asked to leave work early, but she did request permission to arrive late.  Before Calvetti became her supervisor, in December of 2005, Follis began experiencing a loss of strength in her lower extremities.  By December 30, 2005, she could not support herself while standing, and MMC doctors diagnosed her with postacute transverse myelitis.  This condition impairs her spinal cord and affects the functionality of her lower extremities.  Through treatment and medication, Follis regained the ability to support herself, but walking continued to be difficult.  She walked slowly, with a spastic leg and dragging right foot.  Sometimes she needed to stop and rest, and she could not cross the skyway connecting the MMC building to another clinic building without doing so.  Her condition also led to occasional falls.[1]

The parties dispute the extent to which Calvetti was aware of Follis'

---

[1]MMC contends that the evidence of Follis' difficulties walking is unreliable because it consists only of her Affidavit, a self-serving statement.  Yet, affidavits are acceptable evidence at summary judgment.  <u>Fed. R. Civ. P.</u> 56(e).  Because MMC fails to offer any contradictory evidence, Follis' own description of her condition is undisputed.

condition.  Follis contends that she discussed her condition with Calvetti on numerous occasions, and Calvetti had observed her slow walking pace. Calvetti contends that she knew only that Follis had a rare condition that required her to engage in physical therapy and sometimes led to "slow starts in the morning."  <u>Motion for Summary Judgment</u>, Exhibit C, <u>Calvetti Deposition</u>, at 80.  Because Follis is the nonmovant, the Court assumes for purposes of this Motion that Calvetti and Follis had discussed Follis' condition numerous times, and Calvetti had observed Follis walking with difficulty.  It is undisputed that Follis never initiated an accommodation request through MMC's Human Resources Department pursuant to MMC's ADA Reasonable Accommodation Policy.

At a staff meeting on Halloween, Calvetti told Follis that she was concerned that Follis had been arriving at work late, and she informed Follis that she expected her to be at work at 7:00 a.m.  Follis told Calvetti that she occasionally needed a little bit of extra time in the morning to allow her medication to adjust her increased spasticity and asked if she could have a flexible work schedule allowing her to arrive after 7:00 a.m. on occasion. Calvetti denied her request, stating that she needed Follis to provide a good example for the rest of her staff.

Also at this Halloween meeting, Calvetti and Follis discussed treat bags Follis had made for some members of the Radiology Department. Follis wanted to reward her staff and prepared treat bags for them. She did most of the work on these bags at home, but she finished them at work, during her breaks and over lunch. She gave the bags to her subordinate employees. At the meeting, Calvetti indicated that staff members who had not received bags were upset. Additionally, she stated that she understood that Follis had prepared the bags on hospital time. Before this meeting, Follis heard from a co-worker that Calvetti had asked about the bags. At the meeting, Follis told Calvetti that if Calvetti had something to say to her, Calvetti should say it directly to her instead of speaking to other people about it.

Later, in November, Follis and Calvetti again discussed Follis' arrival time, because Follis had arrived late that morning after falling in her driveway. Calvetti did not inquire about Follis' health after this fall, but she offered to allow Follis to begin reporting to work at 8:00 a.m. instead of 7:00 a.m. Follis declined Calvetti's offer because an 8:00 a.m. arrival time did not fit with her husband's schedule, and the two drove to work together each morning. Follis also thought it was important to be at work when her staff was present, and some staff members started at 7:00 a.m. Follis

reiterated her desire for a flexible start time, but Calvetti again refused this request.

At another meeting in November, Calvetti told Follis that she had received a number of phone calls from women asking why MMC had no digital mammography equipment. Follis told Calvetti that she would investigate, and she discovered that another MMC employee had been encouraging women at her church to contact MMC and request digital mammography equipment. On November 14, 2006, Calvetti and England asked Follis to develop a business plan for bringing digital mammography equipment to MMC. Follis had already begun working on a digital transition plan, and she continued to do so after this meeting, but Calvetti was disappointed in the level of progress Follis made.

On November 15, 2006, in a meeting of Follis' staff, one of the staff members asked MMC CEO Ed Curtis if MMC would get digital mammography equipment by the end of the year. Curtis indicated that MMC was recruiting a full-time doctor for mammography, and it would not make any decisions on digital equipment until the new physician started. Calvetti believed that Follis missed an opportunity at this meeting to tell her staff of the ongoing transition planning.

Calvetti was also concerned about a phone conversation Follis had with another employee. In December, Follis planned to attend a conference, but she ran into a staffing dilemma. One of her employees, Jackie Thomas, was in the hospital with stomach problems. Another of her employees, Vicky Franzen, was to attend the conference as well. Follis then received a voicemail from another of her employees, Jennifer Stone, who indicated that she seemed to be recovering from an illness that had kept her home, and she intended to be at work the next day. Follis thought Stone still sounded ill, however, and she worried that if Stone was not in fact able to return to work the next day, the office would be short four employees. Follis considered not attending the conference to prevent this shortage, but she first called Stone at home to ask whether Stone was confident she could return to work the next day. Follis told Stone that Thomas was also out, with stomach problems that required her to be in the hospital. Stone then complained to Calvetti that Follis had breached Thomas' confidentiality by discussing her medical condition, and Calvetti met with Follis to discuss the issue.

On December 15, 2006, Follis submitted a request to the Employee Health Department for permission to use intermittent leave under the Family Medical Leave Act (FMLA). The Employee Health Department

granted her request on December 15, 2006. Eleven days later, Follis advised Calvetti that she had permission to take intermittent FMLA leave. Calvetti did not respond.

Calvetti and Follis then met on January 5, 2007, to review Calvetti's annual appraisal of Follis' work performance. Calvetti awarded Follis target-level scores in compliance with safety goals and turn around time; on customer service, she found that Follis performed between "consistently achieves expectations" and "exceeds expectations." Motion for Summary Judgment, Exhibit A, Follis Deposition, Exhibit 12, Performance Evaluation (at pages 25-29 of attachment 3). She also gave Follis a "consistently appropriate" score on professional appearance. Id. (at page 30 of attachment 3). In the remainder of categories, however, Calvetti gave Follis negative scores. She indicated that Follis performed below expectations on patient satisfaction surveys regarding promptness of service and the percentage of her staff who would recommend the department as a great place to work. On attitude, courtesy and respect, and professional conduct, she indicated that Follis performed between a score of "conduct is consistently appropriate" and "conduct is situational and inconsistent." Id. (at pages 29-30 of attachment 3). On communication and teamwork, she

stated that Follis' performance was situational and inconsistent.

In the comments section of the evaluation, Calvetti referred to several prior incidents. She indicated that Follis spent too much of her time trying to make her staff happy and spent time during work on holiday treats, which prevented her from meeting deadlines. Calvetti also stated that Follis' boundaries were too loose, which led her to violate employee confidentiality. She indicated that Follis was very disorganized, which impacted Follis' ability to communicate well. Calvetti also highlighted a concern about Follis' arrival times. Finally, she indicated that Follis had difficulty following appropriate channels of authority and assuming responsibility for department issues.

Follis was surprised and upset by the negative evaluation. She included handwritten rebuttals on the evaluation form during her meeting with Calvetti. She also wrote that she wanted to pursue an appeal of her evaluation. MMC maintains a policy allowing employees to file grievances if they disagree with any issue in the workplace.

Calvetti then met with England. She told him that she had not anticipated Follis' strong reaction to her evaluation; instead, she had hoped Follis would respond by expressing a desire to improve her performance.

Calvetti viewed Follis' disagreement with Calvetti's assessment of her performance as an indication that the two could not work together successfully. Calvetti recommended that England terminate Follis, and England accepted Calvetti's recommendation. MMC terminated Follis on January 12, 2007.

At the time of Follis' termination, MMC had a Corrective Action policy. The policy provided that "the corrective action process follows the track of verbal conference, 1st written warning and 2nd written warning with suspension. During the suspension period Human Resources, in consultation with the manager, will determine whether or not the employee will return to work or be discharged." Plaintiff's Memorandum of Law in Opposition to Summary Judgment (d/e 22), Exhibit 14, Corrective Action Policy, at 9. The policy provides that discharge will follow "in cases where measures to correct the employee's behavior have been unsuccessful." Id. at 10. Where discharge is considered, however, the employee first will be suspended without pay, and the Human Resources Department, department head, administrative representative, and, where appropriate, the employee will review the case before deciding on discharge. The policy also provides the following exception: "For serious misconduct, an employee may be

subject to a written warning or suspension or a discharge without the preliminary verbal conference." Id.

In Follis' case, no corrective action documentation exists in her file. Human Resources played no role in the decision to terminate her; England and Calvetti made that decision alone.

In January of 2007, Follis met with a representative at the Illinois Department of Human Rights to file a charge with the EEOC and the Illinois Department of Human Rights regarding her termination. Among other claims, her charge alleges a failure to accommodate a physical handicap. Specifically, she alleged, "On Dec 14, 2006, I submitted request of the accommodation of a flexible start time to be effective as of Dec 15, 2007." Motion for Summary Judgment, Exhibit A, Follis Deposition, Ex. 2, EEOC Charge (at page 2 of Attachment 3). After the EEOC issued a right to sue letter, Follis filed this suit.

## ANALYSIS

Three of Follis' counts remain here: Counts II, III, and IV. In Count II, she alleges that MMC violated the ADA by refusing to grant her a flexible start time and terminating her based on an alleged disability. In Count III, she alleges that MMC violated the ADEA by terminating her

based on her age.  In Count IV, she alleges that MMC violated the FMLA by terminating her in retaliation for making an FMLA leave request.  MMC is entitled to summary judgment on Follis' ADA and ADEA termination claims, but it is not entitled to summary judgment on her ADA accommodation or FMLA leave claims.

## I.    ADA CLAIM

Follis has brought two separate claims under the ADA.  She alleges that MMC failed to accommodate a disability and terminated her because of a disability.[2]  MMC argues that it is entitled to summary judgment on both claims.  Issues of fact remain on the accommodation claim, but MMC is entitled to summary judgment on the discrimination claim.

### A.    Failure to Accommodate

On Follis' failure to accommodate claim, MMC argues that she neglected to exhaust her administrative remedies before filing this suit and that she lacks sufficient evidence to prove her claim.  Both of MMC's

---

[2]In several instances, the parties have referred to Follis' ADA discrimination claim as a retaliation claim, but she has not brought an ADA retaliation claim.  Her Complaint states: "MMC . . . violated Follis' rights under the ADA in two different respects.  First, it refused to offer her a reasonable accommodation or engage in meaningful dialogue regarding the possibility of such a modification.  Second, Follis' employment was terminated with MMC . . . because of her disability."  Complaint (d/e 1), ¶ 24.  Count II contains no ADA retaliation allegations.

arguments are unpersuasive.

1.    Exhaustion of Remedies

Preliminarily, MMC wrongly asserts that Follis has waived her ADA failure to accommodate claim here by not including her requests for accommodation in her EEOC charge. An ADA plaintiff may not pursue claims in court that she neglected to include in her underlying charge before the EEOC. Basith v. Cook County, 241 F.3d 919, 931 (7th Cir. 2001); Cheek v. W. and S. Life Ins. Co., 31 F.3d 497, 500 (7th Cir. 1994). MMC argues that because Follis' charge here only indicated a request for a flexible start time on December 14, 2006, evidence of any other requests for accommodation is barred.

Because most EEOC charges are completed by laypersons, a charge need not include every fact that forms the basis of a claim. Cheek, 31 F.3d at 500. A charge encompasses a plaintiff's claims if the allegations in the complaint are "like or reasonably related to the allegations of the charge and growing out of such allegations." Jenkins v. Blue Cross Mut. Hosp. Ins., Inc., 538 F.2d 164, 167 (7th Cir. 1976) (en banc) (internal quotation marks omitted). The time frame described in the charge is a relevant factor in deciding whether the complaint's allegations are related. Malhotra v. Cotter

& Co., 885 F.2d 1305, 1312 (7th Cir. 1989) (superseded by statute on other grounds, as noted in Rush v. McDonald's Corp., 966 F.2d 1104 (7th Cir. 1992)). Whatever the time frame, however, the Jenkins' test is satisfied if: (1) there is a reasonable relationship between the charge's allegations and the complaint's claims and (2) the claims in the complaint could have been expected to grow out of an EEOC investigation of the charge's allegations. Cheek, 31 F.3d at 500.

Follis has met the requirements of the Jenkins' test. Her charge alleged that on December 14, 2006, she requested a flexible start time as an accommodation for her medical condition. Follis has offered no evidence of a request on that date, but she has produced evidence indicating that she requested a flexible start time on October 31, 2006, and in November of 2006.[3] This evidence satisfies the Jenkins' test because: (1) there is a reasonable relationship between the charges' allegation of a flexible start time request and the evidence of identical requests, albeit on different dates, and (2) an EEOC investigation of a request for a flexible start time in

---

[3]Follis also asserts that she requested an accommodation from Human Resources employees Brian Tieman and Angela Nguyen in January of 2007, but the evidence does not support her allegation. The evidence establishes only that after her evaluation by Calvetti, in January of 2007, she informed Tieman that she previously had requested a flexible start time. Motion for Summary Judgment, Exhibit A, Follis Deposition, at 25, 45-46.

December of 2006 could be expected to uncover evidence of such a request in October and November of the same year. Thus, Follis has exhausted her remedies on her accommodation claim.

2.    Merits of the Failure to Accommodate Claim

In addition to exhausting her remedies on the accommodation claim, Follis has presented evidence demonstrating that this claim should proceed to trial. To prove an ADA violation, Follis "must show: 1) that she is disabled; 2) that she is otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and 3) that the employer took an adverse job action against her because of her disability or failed to make a reasonable accommodation." Winsley v. Cook County, 563 F.3d 598, 603 (7th Cir. 2009) (internal quotation marks and citation omitted). MMC fails to show that Follis cannot do so.

a.    Disability

On the first element, MMC argues that Follis cannot show that she was disabled. The ADA defines a disability as "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1)(A). EEOC regulations advise that an individual is substantially limited in a major life activity if that individual

is "[s]ignificantly restricted as to the condition, manner or duration under which [the] individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j). Walking is a major life activity. EEOC v. Sears, Roebuck & Co., 417 F.3d 789, 802 (7th Cir. 2005).

Follis has offered evidence regarding her ability to walk that a jury could find indicates a substantial limitation. Follis' evidence shows that she walked slowly, with a spastic leg and dragging right foot, and could not cross a skyway without stopping to rest. In Sears, the court concluded that a plaintiff's evidence that she could not walk a city block without her right leg and feet growing numb, making walking extremely slow, sufficed to survive a motion for summary judgment. Id. The evidence here is similar. MMC argues that Follis' reference to difficulties crossing the skyway is too vague to support her claim, because she fails to establish how long the skyway is. While a city block is a more recognized and standard distance, it is not much more specific than Follis' reference to a skyway connecting two buildings. Her evidence is specific enough to allow a jury to assess it.

b.    Qualifications

MMC does not address Follis' qualifications to perform the essential functions of her job with or without reasonable accommodation. For purposes of the Motion for Summary Judgment, the Court assumes that Follis can satisfy this second element of her claim.

c.    Failure to Accommodate

To establish the third element of a failure to accommodate claim, a plaintiff must show that the employer knew of her disability and with that knowledge refused to accommodate the disability. See Mobley v. Allstate Ins. Co., 531 F.3d 539, 546 (7th Cir. 2008). MMC contends that it neither knew of Follis' alleged disability nor refused to accommodate it.

First, an issue of fact exists on whether MMC knew of Follis' alleged disability. MMC argues that because Follis never initiated an accommodation request through MMC's Human Resources Department pursuant to MMC's ADA Reasonable Accommodation Policy, it was not aware of her alleged disability. Yet, the Seventh Circuit has held that to inform an employer of a disability, an employee need only "indicate to the employer that she has a disability and desires an accommodation." Sears, 417 F.3d at 804. Follis has presented evidence that she discussed her

condition with Calvetti on numerous occasions, Calvetti had observed her slow walking pace, and Follis asked Calvetti for a flexible start time to alleviate difficulty her condition caused her in the morning. A jury could conclude based on this evidence that Follis indicated to her employer that she had a disability and desired an accommodation.

Second, an issue of fact also exists regarding whether MMC refused to accommodate Follis' alleged disability. Where an employee is disabled, the "employer is not obligated to provide [the] employee the accommodation he requests or prefers, the employer need only provide some reasonable accommodation." Gile v. United Airlines, 95 F.3d 492, 499 (7th Cir. 1996). Calvetti refused to allow Follis a flexible start time, but she did offer to allow Follis an 8:00 a.m. start time, to provide her additional time in the mornings when her symptoms slowed her down. Calvetti indicated that she would not allow a flexible start time because she needed Follis to provide a good example to the rest of her staff, but MMC has presented no evidence on why Calvetti believed that a flexible start time would prevent Follis from setting a good example while an 8:00 a.m. start time would allow her to do so. Without such evidence, the Court cannot determine whether MMC's proposed alternative was reasonable. Thus, MMC has not established that

it is entitled to summary judgment on Follis' failure to accommodate claim.

B.    Discrimination Claim

MMC is entitled to summary judgment on Follis' ADA discrimination claim, however.  To prove that MMC discriminated against her based on her alleged disability, Follis must show that: (1) she was disabled; (2) she otherwise was qualified to perform her job with or without reasonable accommodation; and 3) MMC terminated her because of her alleged disability.  Winsley, 563 F.3d at 603.  As discussed above, MMC has not shown that Follis lacks evidence on the first two prongs, but it contends that she cannot prove the third prong.

MMC is correct that Follis cannot prove her claim under either the direct method of proof or the indirect method.  Under the direct method, a plaintiff must offer direct or circumstantial evidence of discriminatory intent.  Radue v. Kimberly-Clark Corp., 219 F.3d 612, 616 (7th Cir. 2000).  "Direct evidence essentially requires an admission by the decision-maker that his actions were based on the prohibited animus."  Id.  Follis offers no evidence even approaching an admission by Calvetti or MMC.  Moreover, the only evidence she identifies as circumstantial evidence of discriminatory intent is Calvetti's failure to inquire about Follis' health after a fall and

Follis' refusal to grant a flexible start time. Follis has not shown that this behavior related to Calvetti's decision to terminate her, however. Thus, Follis failed to produce evidence suggesting that her physical impairments motivated Calvetti to terminate her.

She also failed to offer sufficient evidence under the indirect method. Under the indirect method of proof, a plaintiff first must show that: (1) she is disabled under the ADA; (2) she was meeting her employer's legitimate employment expectations; (3) she suffered an adverse employment action; and (4) "the circumstances surrounding her . . . discharge indicate that it is more likely than not that her disability was the reason for [her termination]." Leffel v. Valley Financial Svs., 113 F.3d 787, 794 (7th Cir. 1997). As noted, Follis has offered evidence on the first prong, and the parties agree that her termination constituted an adverse employment action. They dispute the second and fourth prongs of this initial test.

On the second prong, MMC contends that Follis has not shown that she was meeting its legitimate employment expectations. It argues only that Follis' failure to accept Calvetti's criticisms of her work as reflected in the evaluation demonstrated that she would not respond to Calvetti's leadership as required. Yet, Follis has offered evidence that MMC policy allowed

employees to file grievances without fear of reprisal if they disagreed with any action in the workplace. This evidence conflicts with MMC's position that Follis' failure to accept Calvetti's performance evaluation criticisms constituted a failure to meet legitimate employment expectations. Thus, Follis has offered sufficient evidence on the second prong to create an issue of fact.

Nonetheless, she has not met her obligation on the fourth prong. Typically plaintiffs satisfy this prong by showing that similarly situated, non-disabled employees received more favorable treatment. Leffel, 113 F.3d at 793-94. Follis elects to follow this common method, and she contends that the ten other individuals who reported directly to Calvetti were similarly situated, and MMC terminated none of them. Yet, she has not shown how these individuals were similarly situated or whether any were disabled. "A similarly situated employee need not be identical, but the plaintiff must show that the other employee dealt with the same supervisor, [was] subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish [her] conduct or the employer's treatment of [her]." Amrhein v. Health Care Svs. Corp., 546 F.3d 854, 860 (7th Cir. 2008) (internal

quotation marks omitted).  The employees Follis identifies also reported to Calvetti, but she has not shown that they were subject to the same standards or had engaged in similar conduct without distinguishing characteristics.  Without this evidence, one cannot judge from a comparison to other employees whether her disability more likely than not was the reason for her discharge.  Thus, MMC is entitled to summary judgment on Follis' ADA discrimination claim.

II.    ADEA CLAIM

Follis also has not offered sufficient evidence to survive MMC's Motion for Summary Judgment on Count III, which alleges that MMC terminated Follis in violation of the ADEA.  Under the ADEA, an employer cannot discharge an employee based on age.   29 U.S.C. § 623(a)(1). Plaintiffs can prove their claims under either the direct method or the indirect method.  Follis argues that she can proceed under both methods, but she failed to offer enough evidence under either.

To establish a violation of the ADEA under the direct method of proof, a plaintiff must offer direct or circumstantial evidence of discriminatory intent.  Radue, 219 F.3d at 616.  "Direct evidence essentially requires an admission by the decision-maker that his actions were based on

the prohibited animus." Id. Follis offers no evidence even approaching such an admission by Calvetti or MMC. Moreover, the only evidence she identifies as circumstantial evidence of discriminatory intent is Calvetti's statement that "[a]nybody who thinks I'm too young . . . or can't do this job doesn't know what I'm made of." Motion for Summary Judgment, Exhibit A, Follis Deposition, at 12. This statement does not relate to Follis' termination. It may indicate that Calvetti was insecure about her age, but Follis has offered no evidence connecting that alleged insecurity to Follis' termination. She has not offered sufficient evidence to establish discriminatory intent under the direct method.

To proceed under the indirect method, a plaintiff first must show that: (1) she is a member of the protected class; (2) she performed her job satisfactorily; (3) her employer terminated her; and (4) the employer treated younger, similarly situated, employees more favorably.[4] Taylor v. Canteen

---

[4]Follis has opted to follow this common method of proving her case under the indirect method, but she argues that the fourth prong requires only a showing that her position remained open after she was terminated. She is correct that some cases characterize the fourth prong in this manner. See, e.g., Lesch v. Crown Cork & Seal Co., 282 F.3d 467, 472 (7th Cir. 2002). Those cases, however, involve reduction in force decisions or layoffs, and they still require a plaintiff to show that while her position was not filled, younger, similarly situated, employees were retained. Id. There must be some evidence on which one can infer that the employer took adverse action based on her age. Leffel, 113 F.3d at 793.

Corp., 69 F.3d 773, 779 (7th Cir. 1995).  MMC argues that Follis cannot satisfy the fourth prong of this initial test.

Follis has not offered evidence of how MMC treated younger, similarly situated employees.  Again, a similarly situated employee must deal with the same supervisor, be subject to the same standards, and engage in similar conduct without differentiating circumstances.  Amrhein, 546 F.3d at 860. The only co-worker Follis discusses is Kelly Herter, whom she believed was younger than she was.  Herter also reported directly to Calvetti, but Follis has offered no evidence on whether Herter was subject to the same standards or had engaged in substantially similar conduct.  Without this evidence, Follis cannot survive summary judgment.  Thus, MMC is entitled to summary judgment on Count III.

III.    FMLA CLAIM

Follis' Count IV, an FMLA retaliation claim, survives MMC's Motion for Summary Judgment.   The FMLA allows employees to take leave, including intermittent leave, for medical reasons.  29 U.S.C. § 2612(a)(1). It also prohibits employers from retaliating against employees who have requested such leave.  29 U.S.C. § 2615(a)(2).  Under the direct method of proving retaliation, a plaintiff must establish a statutorily protected activity,

a materially adverse action by the employer, and a causal connection between the two.  Daugherty v. Wabash Center, __ F.3d __, 2009 WL 2477640, at *3 (7th Cir. Aug. 14, 2009).  Here, Follis' evidence of a request to take leave and her subsequent termination clearly satisfy the first two requirements.  MMC contends that she has not offered sufficient evidence on a causal connection, however.

Follis contends that the combination of MMC's decision to terminate her less than a month after she requested FMLA leave and Calvetti's opposition to a flexible start time suffice.  Follis requested intermittent FMLA leave on December 15, 2006.  MMC granted her permission to take such leave on December 21, 2006.  The ability to take intermittent leave essentially gave Follis permission to follow a flexible start time, which Calvetti previously had denied her.  On January 5, 2007, Calvetti and Follis met to discuss Follis' performance evaluation, and on January 12, 2007, MMC terminated Follis.

Follis' evidence is enough to survive summary judgment.  Clearly, timing is one factor on which a plaintiff can rely to establish a causal connection.  See Daugherty, 2009 WL 2477640, at *4; Moser v. Ind. Dept. of Corrections, 406 F.3d 895, 905 (7th Cir. 2005).  The Seventh Circuit has

issued conflicting decisions on whether it can be the sole factor.  See, e.g., Daugherty, 2009 WL 2477640, at *4 ("But this court has held repeatedly that temporal proximity alone is not sufficient to withstand summary judgment."); McClendon v. Indiana Sugars, Inc., 108 F.3d 789, 796 (7th Cir. 1997) ("We agree that, under this circuit's established case law, such a closely related sequence of events is sufficient to present a prima facie case.").  Here, though, Follis also offers Calvetti's opposition to a flexible start time, which intermittent FMLA leave allowed her.  A jury could conclude that Calvetti was unhappy that Follis had obtained a flexible start time despite Calvetti's refusal to allow one.  The combination of this evidence and evidence of the timing is enough for Follis' FMLA retaliation claim to survive MMC's request for summary judgment.

THEREFORE, Defendant Memorial Medical Center's Motion for Summary Judgment (d/e 16) is ALLOWED in part and DENIED in part. MMC's Motion is ALLOWED on the discrimination claim in Count II, but DENIED on the accommodation claim in Count II.  MMC's Motion is also ALLOWED on Count III, but DENIED on Count IV.

IT IS THEREFORE SO ORDERED.

ENTER:   September 11, 2009

FOR THE COURT:

_____   s/  Jeanne E. Scott   _____
JEANNE E. SCOTT
UNITED STATES DISTRICT JUDGE