IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| LINDA FOLLIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 08-3056 |
| | ) | |
| MEMORIAL MEDICAL CENTER, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION

JEANNE E. SCOTT, U.S. District Judge:

This cause is before the Court on Defendant's Motions in Limine 1-6 (d/e 30) and Defendant's Memorandum in Support of Motions in Limine 1-6 (d/e 31). Plaintiff Linda Follis has filed Plaintiff's Memorandum of Law in Opposition to Defendant's Motions In Limine (d/e 32).

This matter is fully briefed and ripe for adjudication. For the following reasons, the Court grants Motions 1, 3, 4, 5, and 6, and grants Motion 2 in part and denies Motion 2 in part.

## FACTS

On February 26, 2008, Plaintiff Linda Follis sued Defendant Memorial Medical Center alleging violations of: (1) § 510 of the Employee

1

Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1140; (2) Title I of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101-12213; (3) the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621 et seq.; and (4) the Family and Medical Leave Act (FMLA), 29 U.S.C. §§ 2601 et seq.[1]  See Complaint (d/e 1).

At the close of discovery, the Court granted Plaintiff's Motion to voluntarily dismiss the ERISA claim.  See Text Order of June 2, 2009. Defendant then filed its Motion for Summary Judgment (d/e 16), which the Court granted in part and denied in part.  Opinion of September 11, 2009 (d/e 26).  The Court dismissed the ADEA claim and the discrimination portion of Plaintiff's ADA claim.  The claims remaining for trial are ones for failure to provide a reasonable accommodation in violation of the ADA, and for violations of the FMLA.  Plaintiff seeks lost wages, front pay, damages for emotional distress and other non-economic injuries, punitive damages under the ADA, and attorneys' fees and costs.

This case is now set for trial, and Defendant seeks to prohibit six types of evidence from being presented to the jury.  Using Defendant's numbering

---

[1] Plaintiff also sued Memorial Health System, but the parties later agreed to dismiss Memorial Health System from the case without prejudice.  Stipulation of Dismissal of Defendant Memorial Health System Without Prejudice (d/e 6).

system, the Court addresses each issue in turn.

I.  MOTION IN LIMINE 1: INSURANCE

Defendant first asks the Court to bar Plaintiff, Plaintiff's counsel, and Plaintiff's witnesses from mentioning the fact that Defendant has insurance that may be available to reimburse or indemnify Defendant for any judgment that may be entered against it. Defendant points out that such evidence is inadmissible under Federal Rule of Evidence (FRE) 411, and unfairly prejudicial under FRE 403. See FRE, 411 & 403. Plaintiff agrees that this evidence is inadmissible.

Federal Rule of Evidence 411 makes clear that such evidence is inadmissible under the circumstances of this case. Therefore, the Court grants Motion 1. All parties, witnesses, and attorneys are barred from mentioning the possibility that Defendant has insurance that may reimburse or indemnify Defendant for all or part of any judgment that may be entered against Defendant in this case.

II.  MOTION IN LIMINE 2: FINANCIAL STATUS

Defendant asks the Court to prohibit any reference to either party's financial status, arguing that such evidence is inadmissible under FRE 401 and 402 as unfairly prejudicial. Plaintiff counters that a restriction on

3

discussing a party's "financial status" is too broad, because Plaintiff will need to present evidence of economic damages to prove her claims. See Response (d/e 32), p. 3. Specifically, Plaintiff states that she will use evidence of "fear of financial ruin" to support her claim for emotional distress under the ADA. Id.

Efforts to invoke the jury's sympathy "through references to the relative wealth of the defendant[] in contrast to the relative poverty of the plaintiff[] [are] improper . . . ." Adams Labs., Inc. v. Jacobs Eng'g Co., Inc., 761 F.2d 1218, 1226 (7th Cir. 1985). This prohibition applies only to the *relative wealth* of the parties, and does not prevent a plaintiff from presenting evidence of her "financial status" to prove economic and non-economic damages. Additionally, a plaintiff seeking punitive damages is allowed to present evidence of the defendant's wealth so that the potential award serves punitive damages' twin purposes of punishment and deterrence. See Kemezy v. Peters, 79 F.3d 33, 34-36 (7th Cir. 1996) (noting that "plaintiffs who are seeking punitive damages often present evidence of the defendant's wealth" to the jury); see also Equal Employment Opportunity Comm'n v. Klockner H&K Machines, Inc., 168 F.R.D. 233 (E.D. Wis. 1996); Equal Employment Opportunity Comm'n v. Staffing

Network, 2002 WL 31473840, at *3-4 (N.D. Ill. Nov. 4, 2002).

Therefore, the Court grants Motion 2 in part. The parties, witnesses, and attorneys are barred from referencing the parties' relative financial statuses for purposes of invoking the jury's sympathy. This ruling does not necessarily prevent Plaintiff from providing evidence of financial status relevant to her claims for economic, non-economic, and punitive damages. However, prior to introducing evidence of the financial status of the Plaintiff, Plaintiff is directed to make an offer of proof to the Court outside the presence of the jury in order that the Court may evaluate whether the proffered evidence is relevant or only an appeal for sympathy. Plaintiff may introduce evidence of Defendant's financial circumstances in connection with her punitive damages' claim.

III. MOTION IN LIMINE 3: GOLDEN RULE JURY VERDICT

Defendant next moves the Court to bar any effort by Plaintiff or Plaintiff's counsel to "induce the jury to render a verdict in a manner inconsistent with its role as a neutral fact-finder." Memorandum, p. 2. Plaintiff agrees that such actions would be improper.

It is inappropriate for any party to encourage a jury to put itself in the plaintiff's shoes and base its decision on self-interest rather than on a

neutral assessment of the facts.  Spray-Rite Serv. Corp. v. Monsanto Co., 684 F.2d 1226, 1246 (7th Cir. 1982).  Consistent with this principle, the Court grants Motion 3.

IV.     MOTION IN LIMINE 4: PREVIOUSLY ADJUDICATED CLAIMS

Defendant's fourth argument is that Plaintiff should not be allowed to present evidence of claims the Court has already ruled on.  Plaintiff has no objection to this request, but points out that the evidence underlying the claims adjudicated at summary judgment overlap the evidence she will present at trial.

The Court agrees that evidence presented solely in support of claims already decided at summary judgment is irrelevant under FRE 401 and 402.  See Leddy v. Standard Drywall, Inc., 875 F.2d 383, 386 (2nd Cir. 1989).  Accordingly, the Court grants Motion 4.

V.      MOTION IN LIMINE 5: VERACITY OF WITNESSES

Defendant next argues that Plaintiff's witnesses should be barred from commenting on or assessing the truthfulness of other witnesses.  Plaintiff agrees with this general proposition.

It is improper for counsel to ask one witness to discuss the truthfulness of another witness.  United States v. McKee, 389 F.3d 697, 699 (7th Cir.

2004); United States v. Freitag, 230 F.3d 1019, 1024 (7th Cir. 2000). However, this prohibition does not prevent counsel from arguing about a witness' credibility to the jury so long as the argument "reflects reasonable inferences drawn from the evidence presented at trial rather than personal opinion." McKee, 389 F.3d at 699. Ultimately, though, it is the jury's responsibility to weigh and evaluate credibility. Robinson v. Burlington Northern R. Co., 131 F.3d 648, 656 (7th Cir. 1997).

Therefore, the Court grants Motion 5, to the extent that no witness shall opine on the truthfulness of another witness.

VI. MOTION IN LIMINE 6: MATTERS SUBSEQUENT TO 04/28/07

Defendant's final request is that the Court bar Plaintiff from producing "[t]estimony, evidence or comments regarding any actions, circumstances or alleged damages occurring after April 28, 2007 . . . ." Memorandum, p. 3. Defendant argues that because Plaintiff began receiving Social Security disability insurance (SSDI) benefits on that date, she cannot recover back pay from that date forward, reinstatement, or front pay. Plaintiff counters that receipt of SSDI benefits is not inconsistent with her claims, and that Defendant's argument conflates two distinct remedies.

Plaintiff in this case seeks a variety of remedies, including lost wages,

7

front pay or reinstatement, emotional damages, punitive damages, and attorneys' fees and costs. The Court analyzes Defendant's sixth request first as it pertains to her FMLA claim, and next in relation to her ADA reasonable accommodation claim.

    A.    <u>FMLA Claim</u>

If Plaintiff prevails on her FMLA claim at trial, one potential remedy is an award of back pay. 29 U.S.C. § 2617(a)(1)(A)(i)(I). The Court of Appeals for the Seventh Circuit has not ruled on whether back pay under the FMLA is an equitable remedy for the Court, rather than the jury, to decide. <u>See</u> <u>Franzen v. Ellis Corp.</u>, 543 F.3d 420, 426 (7th Cir. 2008). In <u>Franzen</u>, the Seventh Circuit addressed the issue and noted the FMLA's similarities to the Fair Labor Standards Act (FLSA), which allows the question of back pay to go to the jury. <u>Id.</u> The <u>Franzen</u> Court also discussed the Court of Appeals for the Sixth Circuit's holding that the FMLA gives plaintiffs the right to have a jury decide the issue of back pay. <u>Id.</u>; <u>Frizzell v. Southwest Motor Freight</u>, 154 F.3d 641, 643-44 (6th Cir. 1998). The <u>Frizzell</u> Court determined that treating back pay in FMLA cases as an equitable remedy, as is done in Title VII or ERISA cases, was inappropriate given the FMLA's similarities in terms of design and

8

congressional intent to the FLSA.  Frizzell, 154 F.3d at 644.

This Court notes that the structure of the FMLA's remedial provisions differs from that of the ADA (discussed below), where back pay is an equitable remedy.  Section 2617 lists lost wages and other types of compensation in separate subsections from the provision allowing "for such equitable relief as may be appropriate, including employment, reinstatement, and promotion."  See 29 U.S.C. §§ 2617(a)(1)(A) & (a)(1)(B).  This differs from the remedial provisions governing employment discrimination cases, where back pay is specifically enumerated in conjunction with other equitable remedies.  See 42 U.S.C. § 2000e-5(g)(1). Accordingly, the Court finds that the issue of back pay on Plaintiff's FMLA claim is for the jury.

Another potential remedy is reinstatement or, if reinstatement is not feasible, front pay.  29 U.S.C. § 2617(a)(1)(B).  Reinstatement is not feasible if, for example, there is animosity between the plaintiff and her would-be supervisor. Hybert v. Hearst Corp., 900 F.2d 1050, 1055 (7th Cir. 1990).  In such cases, front pay, which "is awarded to victims of employment discrimination to compensate them for the continuing future effects of discrimination until they can be made whole," may be appropriate.

9

45C AM JUR. 2D Job Discrimination § 2641 (West 2009).

In the Seventh Circuit, front pay in an FMLA case is an equitable remedy; thus, the Court, not the jury, decides whether to award the plaintiff front pay. Franzen, 543 F.3d at 425 (7th Cir. 2008); Mattenson v. Baxter Healthcare Corp., 438 F.3d 763, 771 (7th Cir. 2006). However, an employee "has no right to reinstatement–and, therefore damages–if, at the end of [her] twelve-week period of leave, he is either unable or unwilling to perform the essential functions of [her] job." Franzen, 543 F.3d at 426. Regulations promulgated by the U.S. Department of Labor make clear that:

> If the employee is unable to perform an essential function of the position because of a physical or mental condition . . . the employee has no right to restoration to another position under the FMLA. The employer's obligations may, however, be governed by the [ADA], as amended.

29 C.F.R. § 825.216(c).

In this case, Plaintiff testified at her deposition that she ceased looking for other employment after Defendant terminated her when she received notice on April 28, 2007, that her application for SSDI benefits had been approved. Memorandum, Ex. 1, Linda Follis Dep., 59: 7-15. There is no evidence before the Court of what statements Plaintiff made in her SSDI application. Plaintiff stated that as of January 2007, she was physically

capable of employment, although not as a staff nurse. Id., 60:14-61:1. However, on January 31, 2007, Plaintiff's neurologist, Dr. Narla Koteswara, opined that Plaintiff was not "in a position to work continuously any longer." Memorandum, Ex. 2, Neurology Note. Plaintiff testified at her deposition on April 17, 2009, as follows:

> Q: All right. Now in your complaint one of your demands is for reinstatement to work. Is it your testimony at this point in time you are no longer physically able to work?
>
> A: No, I'm no longer physically able to work, and my termination paper marks -- is marked that I'm not deemed suitable for reemployment at Memorial Medical Center.
>
> Q: I understand that, but your complaint nevertheless asks that you be reinstated to work, and I'm just trying to confirm whether or not you have the physical ability to work at this point in time or not.
>
> A: No, I do not.

Memorandum, Ex. 1, Linda Follis Dep., 65:21-66:10.

The Court finds that evidence of damages or events occurring after April 28, 2007, would be inappropriate. Plaintiff's neurologist stated at the end of January 2007 that he did not believe Plaintiff was capable of working, and Plaintiff admitted that she stopped seeking employment after the SSA informed her on April 28, 2007, that she would receive SSDI

benefits. This evidence indicates that Plaintiff was not capable of working after April 28, 2007.

Therefore, the Court grants Motion 6 in relationship to Plaintiff's FMLA claim. Plaintiff is barred from presenting evidence of back pay damages after April 28, 2007, to the jury. In terms of equitable relief, should Plaintiff prevail on her FMLA claim at trial, she will not be entitled to reinstatement or front pay.

B.  ADA Claim

Defendant also argues that Plaintiff's SSDI application bars her from recovering back pay after April 28, 2007, on her ADA claim. Plaintiff counters that a finding of disability for Social Security purposes is not inconsistent with her ability to perform her job with a reasonable accommodation.

In an ADA reasonable accommodation case, back pay and front pay are equitable remedies. See 42 U.S.C. § 2000e-5(g)(1) (giving courts the power to order back pay or "any other equitable relief as the court deems appropriate" if the employer is found to have engaged in an unlawful employment practice); Kramer v. Banc of America Secs., LLC, 355 F.3d 961, 966 (7th Cir. 2004); Pals v. Schepel Buick & GMC Truck, Inc., 220

F.3d 495, 500-501 (7th Cir. 2000); see also 42 U.S.C. § 1981a(b)(2); U.S. v. Apex Oil Co., Inc., 579 F.3d 734, 736 (7th Cir. 2009). It is thus the province of the Court, not the jury, to decide whether a plaintiff, who prevails in an employment discrimination suit, is entitled to back pay, front pay, or both. See Pals, 220 F.3d at 501.

There are many situations in which "an SSDI claim and an ADA claim can comfortably exist side by side." Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 803 (1999). This is because the ADA's definition of a disabled person takes into consideration the possibility of a "reasonable accommodation," while the Social Security Administration's definition does not. Id. However, an ADA plaintiff must provide an explanation for the disparity, and "cannot simply ignore the apparent contradiction that arises out of the earlier SSDI total disability claim." Id. at 806.

As discussed above, the evidence shows that Plaintiff was disabled and unable to work as of April 28, 2007. While Cleveland indicates that receipt of SSDI benefits and an ADA lawsuit are not mutually exclusive, Plaintiff has not provided the Court with a sufficient explanation for this disparity. See Cleveland, 526 U.S. at 803, 806. Plaintiff's neurologist stated on January 30, 2007, that he did not believe Plaintiff was capable of working,

and Plaintiff admitted that she stopped seeking employment after the SSA informed her on April 28, 2007, that she would receive SSDI benefits.

Accordingly, the Court grants Motion 6 as it pertains to Plaintiff's ADA reasonable accommodation claim. At trial, Plaintiff is barred from presenting evidence of damages occurring after April 28, 2007, to the jury for purposes of proving non-economic damages. In terms of the equitable remedies Plaintiff seeks, should she prevail, she will not be entitled to an award of back pay for the period after April 28, 2007, nor will she be entitled to an award of front pay.

## CONCLUSION

THEREFORE, Defendant's Motions In Limine 1-6 (d/e 30) are GRANTED in part, and DENIED in part. Motions 1, 3, 4, 5, and 6 are GRANTED; Motion 2 is GRANTED in part, and DENIED in part.

IT IS THEREFORE SO ORDERED.

ENTER: January 29, 2010

    FOR THE COURT:

                                  s/ Jeanne E. Scott
                                  JEANNE E. SCOTT
                     UNITED STATES DISTRICT JUDGE